Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:    (650) 965-8731
Facsimile:    (650) 989-2131

Attorney for Difusion 11700

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIFUSION 11700 | Case No.:  5:25-cv-6215 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1.  DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND PRIORITY OF TRADEMARK RIGHTS UNDER 28 U.S.C. § 2201 AND THE LANHAM ACT (15 U.S.C. § 1051 et seq.) |
| COMERCIALIZADORA VNA, S.A. DE C.V., | |
| Defendant. | **BENCH TRIAL REQUESTED** |

1.    Plaintiff Difusion 11700 ("Plaintiff"), a Mexican corporation for their Complaint against Defendant Comercializadora VNA, S.A. de C.V. ("Defendant" or "VNA"), allege as follows:

## I.    THE NATURE OF THE ACTION

2.    This is an action for declaratory judgment arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff Difusion 11700 seeks a declaration that it has priority of rights in the DESPECHO mark in the United States in connection with restaurant and bar services, and that its use and registration of the mark does not infringe any rights claimed by Defendant Comercializadora VNA, S.A. de C.V.

3.    Contrary to Defendant's allegations, the DESPECHO brand, rooted in Mexican and Latin American cultural themes of heartbreak and emotional catharsis, has been used by Plaintiff since at least late 2023 and formally expanded under Mexican trademark registrations in Classes 25, 38, and 43. Plaintiff filed U.S. Trademark Application No. 98448579 on March 14, 2024, based on a bona fide intent to use the mark in U.S. commerce. Weeks before failed negotiations in mid 2024 regarding a potential business partnership, Defendant filed a competing U.S. application and initiated TTAB Opposition No. 91295672 on December 12, 2024. Plaintiff brings this action to resolve an actual controversy over trademark priority and to protect its brand from improper obstruction through bad-faith opposition tactics.

## II.    PARTIES

4.    Plaintiff Difusion 11700 is a corporation duly organized under the laws of Mexico, with its principal place of business located at Av Ferrocarril de Cuernavaca 66, Int 401-402, lomas de chapultepec, Miguel Hidalgo, Ciudad de México, CP 11000.

5. Defendant Comercializadora VNA, S.A. de C.V. is a variable capital corporation (Sociedad Anónima de Capital Variable) organized under the laws of Mexico, with its principal place of business located at Piso 20, Puerta de Hierro, Avenida Royal Country 4650, Zapopan, Jalisco, Mexico 45116.

## III.    JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq., a federal statute governing the registration, use, and enforcement of trademarks in the United States. Plaintiff seeks a declaration of rights under U.S. trademark law, including but not limited to its rights under 15 U.S.C. §§ 1057 and 1114–1125, making this a federal question case.

7. Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) because this action involves a dispute between citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Difusion 11700 is a corporation organized and existing under the laws of Mexico with its principal place of business in Mexico City. Defendant Comercializadora VNA, S.A. de C.V. is likewise a Mexican corporation with its principal place of business in Zapopan, Jalisco, Mexico. The value of the marks at issue, the planned expansion into the U.S. marketplace, and the direct harm caused by the Defendant's opposition to Plaintiff's trademark rights satisfy the monetary threshold under the diversity statute.

8. This Court has authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, as an actual and substantial controversy exists between the parties. Defendant has filed a formal opposition against Plaintiff's U.S. Trademark Application Serial No. 98448579

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Opposition No. 91295672), placing the parties in direct legal conflict over trademark rights within the United States. This controversy is immediate and real, and it directly affects Plaintiff's ability to enter the U.S. market, establish operations, and secure legal protection for its DESPECHO brand.

9.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims is reasonably anticipated to materialize in this District. Although neither party currently operates in California, both are international companies organized under the laws of Mexico and have stated or demonstrated intentions to expand into the United States. Given the size and prominence of the Spanish-speaking population in the Northern District of California, this forum represents a natural and likely destination for the parties' commercial operations and the consumer marketplace where confusion and injury to Plaintiff's mark are likely to occur or in fact occurring given the marketing efforts.   Specifically, upon information and belief, Defendant engaged in market analysis, brand positioning, and site evaluation, with a focus on metropolitan regions with substantial Latin and Spanish-speaking populations--including but not limited to the Northern District of California. California, and particularly the Bay Area, presents one of the most natural and lucrative regions for the DESPECHO brand due to its cultural alignment, consumer demographics, and dense urban nightlife economy.

10. Plaintiff has taken affirmative steps toward U.S. expansion, including identifying potential engaging with lawyers and hospitality partners, developing U.S.-targeted promotional content, registering the www.despecho.com.mx domain with a U.S.-facing interface, actively promoting its brand through the Instagram account @despecho_usa targeted to U.S. audiences,

Instagram account @DespechoMX, and TikTok account @despechomx.   By the first week of February 2024 multiple comments began requesting that DESPECHO be brought to U.S. cities across the United States. In response to these immediate requests from potential customers, Plaintiff promptly began planning its expansion into the United States, and filing an intent-to-use application in the United States, and designing English-language materials to position the brand in bilingual and bicultural markets in the United States. These preparations are not speculative; they form part of a deliberate and ongoing plan to launch DESPECHO-branded establishments in the United States beginning with trial activations and pop-up events across the United States.

11. The presence of Defendant's opposition at the TTAB and competing trademark applications filed after Plaintiff's U.S. application directly threatens these expansion efforts. Defendant's actions have already chilled potential investment and jeopardized partnership negotiations. Defendant's assertion of priority rights through its applications--despite its lack of priority rights--poses an imminent legal and commercial risk to Plaintiff, particularly in jurisdictions such as the Northern District of California, where Plaintiff reasonably anticipates launching services and where initial consumer confusion is likely.

12. Accordingly, Plaintiff brings this action to resolve the dispute before committing further resources to U.S. expansion. Declaratory relief will allow Plaintiff to proceed with its business plan free of undue legal interference from a junior claimant acting in apparent bad faith. Additionally, this District is a logical and convenient forum for adjudicating this dispute, as Plaintiff has retained U.S. legal counsel in this District and anticipates launching its U.S. operations from major metropolitan areas with significant Latin American cultural engagement,

including this District.

## IV. **BACKGROUND**

A. Plaintiff's Trademark Applications and Prior Use

13. Plaintiff Difusion 11700 is the owner of U.S. Trademark Application Serial No. 98448579 for the mark DESPECHO, filed on March 14, 2024, which covers restaurant and bar services in International Class 43. In addition to its pending U.S. application, Plaintiff owns valid and subsisting registrations for the DESPECHO mark in Mexico across several trademark classes, including Class 43 (restaurant services), Class 25 (apparel), and Class 38 (telecommunications services), reflecting the breadth of its commercial activities and brand identity.

14. Plaintiff Difusion 11700 is the originator and rightful owner of the DESPECHO brand concept, which was conceived and developed as a culturally rooted hospitality experience reflecting the emotional themes of heartbreak and catharsis that permeate Latin American music, art, and popular culture. The word despecho, meaning "spite" or "heartbreak" in Spanish, has long been associated in Latin America with emotionally charged music genres like ranchera, romantic ballad and pop. Drawing on these deep cultural associations, Plaintiff established a distinctive experiential brand encompassing restaurant and bar services offering unique experiences that invite patrons to "sing out" their sorrow and find community through shared cultural expressions of despecho.

15. Plaintiff Difusion 11700 commenced use of the DESPECHO mark in commerce in Mexico as early as late 2023, organizing promotional events during that year and branding its first physical restaurant location in Mexico City in or about January 2024. These activities

preceded any use in the United States or Mexico by Defendant. Plaintiff's concept quickly expanded, with new DESPECHO locations opening throughout Mexico, including in San Ángel, Metepec, Cuernavaca, Querétaro, Aguascalientes, Mazatlán, Avándaro, and Satélite CDMX, all of which actively operate under the unified DESPECHO brand identity.

16. In support of its growing presence, Plaintiff secured formal recognition of its rights through multiple Mexican trademark registrations for the DESPECHO mark, including:

17. Class 43 (restaurant and bar services): Filing No. 3051163 -- Registration No. 2679069

18. Class 25 (clothing and apparel): Filing No. 3156062 -- Registration No. 2764627

19. Class 38 (telecommunications services): Filing No. 3156065 -- Registration No. 2764628

20. These registrations are valid, enforceable, and reflect Plaintiff's bona fide and continuous use of the DESPECHO mark in connection with a well-known and culturally resonant concept operating across multiple regions of Mexico. By contrast, Defendant has repeatedly failed in its efforts to secure corresponding rights in Mexico for its later-adopted and confusingly similar SALA DE DESPECHO mark, particularly in Class 43, where Defendant's applications have been denied or opposed multiple times by Mexican authorities and third parties.

21. Thus, Plaintiff's use of DESPECHO predates Defendant's first use by several months, is geographically broader, and is supported by strong consumer recognition, national registrations, and commercial goodwill throughout Mexico.

B. Defendant's Inferior Rights & Trademark Applications in the United States

22. Defendant purports to be the current owner of certain Mexican and U.S. trademark

applications incorporating the phrase SALA DE DESPECHO, including but not limited to applications filed in the United States shortly after Plaintiff's federal filing. These filings followed failed business negotiations in which Defendant, through its owner and agents, approached Plaintiff with a proposal to invest in Plaintiff's brand and potential U.S. operations. Following the breakdown of those discussions, Defendant proceeded to file its own applications in both Mexico and the United States, and has now initiated opposition proceedings at the U.S. Trademark Trial and Appeal Board against Plaintiff's earlier-filed U.S. application.

C. <u>Facts Giving Rise to this Action</u>

23. This action arises from: (i) the imminent threat of litigation following the breakdown of business partnership negotiations between Plaintiff and Defendant around August 15, 2024; (ii) Plaintiff's planned expansion into physical locations in the United States, supported by its intent-to-use U.S. Trademark Application No. 98448579 (the '579 Application) filed on March 14, 2024; and (iii) Defendant's opposition to the '579 Application, filed on or about December 12, 2024, in TTAB Opposition No. 91295672.

D. <u>Introduction</u>

24. Meaning and Cultural Origin of "Despecho": In Spanish, the word "despecho" translates to feelings of spite, resentment, or heartbreak -- emotions typically associated with the pain of lost love. Culturally, "despecho" has deep roots in Latin music and nightlife. For decades, Latin American audiences have used music as an outlet for heartbreak; in Colombia, for example, there is an entire genre known as *música de despecho* ("songs of heartbreak") that became part of regional identity.[1] These are impassioned ballads of love and loss, famously epitomized by

---

[1] *Paisa* (region), Wikipedia,
https://en.wikipedia.org/wiki/Paisa_(region)#:~:text=,this%20genre%20in%20United%20States

artists like Darío Gómez (nicknamed *El Rey del Despecho*, "The King of Heartbreak"). *Id.* In Mexico, the concept of *despecho* -- drowning one's sorrows in music, singing, and drink -- is also well understood and cherished as part of the pop culture.

25. Even though "despecho" refers to heartbreak and spite in general, it is not a coined brand name but a common Spanish term. According to the Real Academia Española, *despecho* is interpretable to mean a resentment or disgust caused by a disappointment or frustration, often driving one to acts of defiance or vengeance (in a love context, this is the bitterness after a heartbreak).[2] In everyday usage, someone acting "por despecho" means they're acting *"out of spite"* or *"on the rebound"* because of an emotional hurt.

26. Despite this general meaning, Plaintiff's intended use of "Despecho" as a trademark for restaurant and bar services is inherently distinctive within the United States in that it identifies a specific source of services (a particular brand offering restaurant and bar services) rather than just the emotion, and is unknown to non-Spanish speakers. The term evokes the theme of the business (heartbreak relief), but it does not directly describe a product (there is no literal "heartbreak" product being sold) to American consumers. Thus, while the word might be suggestive of the experience one has at these venues to United States consumers, it has still functioned as a distinctive brand name in practice -- as evidenced by the fact that the Mexican trademark authority granted registrations for "Despecho" to the Plaintiff. In other words, *"Despecho"* in the context of a bar is not a generic term for bars; it's an imaginative use of a cultural concept as a brand name, which customers recognize and associate with the specific

---

(as of July 22, 2025).
[2] *Despecho*, Diccionario de la lengua española, Real Academia Española, https://dle.rae.es/despecho (last visited July 22, 2025).

venue.

E. <u>Plaintiff's "Despecho" Brand and Prior Rights</u>

27. The Plaintiff conceived and launched "Despecho" as a branded restaurant and bar venue in Mexico. In late 2023, Plaintiff was developing the concept of a bar/restaurant where people could come to heal their *corazones rotos* (broken hearts) by singing and sharing in nostalgic music. An initial promotional event was held around late December 2023 to introduce the Despecho concept to the public. The first official location of Despecho opened on January 2024 in Mexico, featuring the full experience -- restaurant - bar with live music and music from of 80's, 90's, 2000's and current hits for patrons to "cantar todo lo que sientes" ("sing everything you feel"), themed cocktails, and an ambiance celebrating those friends who help us mend our hearts one song at a time. In marketing, Plaintiff's venue touted slogans like *"Se curan corazones rotos"* ("Healing broken hearts") to emphasize the heartbreak-healing theme, and patrons would cheer *"¡Cheers! Por esas amigas que nos curan el corazón de a poquito"* ("Cheers! To those friends who little by little heal our hearts") during their nights of camaraderie.[3] This authentic focus on overcoming heartbreak resonated strongly with the target audience.

28. Given the events that were already being held at the venue, Plaintiff moved quickly to secure trademark protection for the brand for the full branding. Plaintiff filed trademark applications in Mexico for "DESPECHO" across multiple relevant classes. Notably, Plaintiff sought protection in:

29. Class 43 (services for providing food and drink, e.g. bar and restaurant services) --

---

[3]  Plaintiff's website www.despecho.com.mx

*Filing No. 3051163*, which proceeded to registration (Mexican Registration No. 2679069).

30. Class 25 (clothing, likely for merchandise like branded apparel) -- *Filing No. 3156062*, registered under No. 2764627.

31. Class 38 (telecommunications, possibly for streaming music or online content related to the brand) -- *Filing No. 3156065*, registered under No. 2764628.

32. These Mexican registrations formally grant Plaintiff exclusive rights to the mark DESPECHO in those classes within Mexico. The Class 43 registration is particularly critical, as it covers the core business of a Despecho bar/restaurant. Securing that registration indicates that the Mexican Institute of Industrial Property (IMPI) found "Despecho" sufficiently distinctive for those services (or at least that it acquired distinctiveness through use), firmly establishing Plaintiff as the senior rights holder for the Despecho name in the hospitality/entertainment space in Mexico.

33. On July 2024, "Sala de Despecho" had only announced its new locations within Mexico and had made no announcements regarding any expansion into the United States. It was not until Plaintiff publicly announced on social media on August 7, 2024, that it would be opening in Miami, that Defendant reacted. Just four days later, on August 11, 2024, Defendant hastily announced a pop-up event at a venue called One K in Miami, clearly as an immediate response to Plaintiff's communication.

34. At that time, Plaintiff already operated six (6) established locations in Mexico, while Defendant had only one (1) location and was infringing Plaintiff's trademark rights in International Class 43 in Mexico, upon information and belief.

35. As of this action, Plaintiff's goodwill extended beyond just a single location -- with

expansion to nearly 30 locations in Mexico, and planned expansion internationally into the United States, given the universal relatability of the concept. On March 14, 2024, Plaintiff had also initiated steps to protect the DESPECHO mark in the United States, filing a U.S. Trademark Application No. 98448579 (the '579 Application) for the mark DESPECHO (for similar services)  to secure priority for a planned expansion into the U.S. market. Plaintiff's '579 Application is the application that has now become the subject of the opposition described below.

F.   Defendant's "Sala de Despecho" Brand and Conduct

36. At the same time that the Plaintiff was launching "Despecho," a competing venture named "Sala de Despecho" was introduced in the Mexican market by Defendant. "Sala de Despecho," which roughly translates to "Hall of Heartbreak," uses the standard dictionary meaning of the word "despecho," a familiar term in Mexican Spanish. In contrast, the name "Despecho" is distinctive for American audiences, as it does not carry a recognized meaning in English.   In the Defendant's Mexico operations, it is a nightlife venue where "todxs tenemos un ex" ("we all have an ex") and the goal is to sing, drink, and let out all the feelings of despecho together.[4] According to industry publications, the Sala de Despecho concept was developed by Grupo Mandala and Grupo Enter, companies well-known for creating themed nightlife experiences.[5] Upon information and belief, the Defendant's first "Sala de Despecho" location opened in early 2024 -- months after the Plaintiff began promoting "Despecho" as coming soon

---

[4]  Defendant's website https://saladedespecho.mx/
[5] BWE Marketing News, Sala de Despecho: El concepto que está transformando el entretenimiento "mexa", BWE.mx, https://bwe.mx/marketing-news/sala-de-despecho-el-concepto-que-esta-transformando-el-entretenimiento-mexa#:~:text=Originalmente%2C%20el%20concepto%20fue%20desarrollado,lo%20tradicional%20con%20lo%20moderno.

on Instagram and hosting related events in 2023.

G. Defendant's Acknowledgment of the Despecho Concept

37. The Defendant's own marketing materials make clear that *"Sala de Despecho"* is directly themed around the despecho idea. On Sala de Despecho's official website, the venue is described as *"una experiencia inolvidable y casi canónica"* that exposes *"lo mejor de la cultura pop mexicana: platillos exquisitos... coctelería deliciosa y divertida, y una curaduría musical para cantar desde el corazón y (des)ahogar cada una de tus penas."* In English, this means the venue offers *"an unforgettable, almost canonical experience showcasing the best of Mexican pop culture: exquisite dishes, fun and delicious cocktails, and a curated musical selection to sing from the heart and drown each of your sorrows."*

38. In short, Defendant openly trades on the core concept of "despecho" (heartbreak and emotional release) as the selling point of its brand. This description is remarkably similar to Plaintiff's concept and tagline -- both businesses center on healing heartbreak through singing and camaraderie. The dominant portion of Defendant's brand name is the word "Despecho" itself, with "Sala de" simply indicating a place/room. Customers naturally refer to the venue as "el Despecho" (e.g. "vamos al Despecho a cantar") in casual speech, highlighting that "Despecho" is the salient element of the name.

39. Defendant's Mexican Trademark Filings: The original proprietors of Sala de Despecho (one of whom was Mr. José Antonio Rodríguez) did pursue trademark protection in Mexico as well. They filed at least one application for "Sala de Despecho" in Class 41 (which covers entertainment services) -- that application was granted and resulted in Mexican Registration No. 2646314 (Filing No. 3006596). However, when it came to the crucial Class 43 (restaurant/bar

services), the Mexican authorities repeatedly refused to register "Sala de Despecho." Defendant's applications in Class 43 were denied -- in fact, multiple attempts were made (Filing Nos. 3149271, 3177699, 3202991, 3248319, 3248320 in Class 43 all failed to achieve registration). Similarly, applications in other classes like Class 21 and 24 (perhaps for glassware, merchandise, etc.) were also denied (Filing Nos. 3149278 in Class 21 and 3149288 in Class 24 were refused). These denials are a matter of record with the IMPI.

40. The likely reason for the refusals in Class 43 is that Plaintiff's earlier-filed DESPECHO mark was already on file or registered in Class 43, thus blocking "Sala de Despecho" on likelihood-of-confusion grounds. In other words, Mexican authorities recognized that *"Despecho"* was already owned by Plaintiff for Restaurant bar services, and that another mark incorporating "Despecho" for the same services would conflict. It is significant that *Defendant was unable to secure the mark "Sala de Despecho" for bar/restaurant services in Mexico*, whereas Plaintiff did -- this underscores Plaintiff's priority and the acknowledged distinctiveness of "Despecho" as associated with Plaintiff in that category.

41. On August 15, 2024, a business transaction occurred that further highlights Defendant's knowledge of Plaintiff's rights. The founders of Sala de Despecho (including Mr. Rodríguez) assigned all rights in the brand to Defendant, Comercializadora VNA, S.A. de C.V., on that date. Essentially, Comercializadora VNA became the new owner of whatever intellectual property and goodwill the Sala de Despecho venture had in Mexico. (Notably, this assignment in Mexico has not been reflected in any USPTO records as of yet, since at that time Sala de Despecho had no U.S. registration -- but VNA took over the brand with full awareness of its trademark situation in Mexico, upon information and belief.)

1

2

H.  Defendant's Approach to Plaintiff and Acknowledgment of Plaintiff's Prior Rights

3

42.  Importantly, on or about the time of that assignment -- August 15, 2024 --

4

representatives of the Defendant directly approached the Plaintiff in an attempt to establish a

5

business relationship. Specifically, Comercializadora VNA's management executive and his

6

team requested a meeting with Plaintiff to discuss a potential partnership or investment. This

7

meeting took place in person and included Mr. Octavio Altamirano of VNA, his son, and one of

8

VNA's directors (the director was actually the individual who had initially contacted Plaintiff to

9

10

set up the meeting). On Plaintiff's side, the founder of Despecho was present. Notably, also

11

present was an individual who had signed as a witness on the Mexican trademark assignment

12

contract transferring Sala de Despecho to VNA -- demonstrating a clear continuity between the

13

brand's transfer and the outreach to Plaintiff.

14

15

43. During this August 15, 2024 meeting, the Defendant's team expressly acknowledged

16

Plaintiff's establishment of the "Despecho" brand and its success. Rather than immediately

17

threaten legal action, they proposed a collaboration: VNA suggested investing in Plaintiff's

18

19

Despecho concept to jointly develop future U.S. locations. In essence, the new owners of Sala

20

de Despecho were conceding that Plaintiff had something of value -- a brand presence and

21

concept that they recognized -- and they were interested in participating in it, presumably to

22

avoid conflict and instead profit together from the expansion into the United States. This offer is

23

24

a critical piece of context. It shows that Defendant was fully aware of Plaintiff's priority in the

25

mark and the marketplace by that date. It also shows that Defendant initially saw partnership as

26

a path forward, which implies an understanding that Plaintiff's rights could not simply be

27

ignored or steamrolled.

28

I.    Defendant's U.S. Trademark Filing and Opposition

44. In the months prior to the meeting, on Jun. 15, 2024, Comercializadora VNA filed its own U.S. trademark application for "Sala de Despecho." This U.S. application by Defendant came after Plaintiff had filed its U.S. application for "Despecho" on March 14, 2025. The timing strongly indicates that Defendant learned of Plaintiff's U.S. trademark filing -- likely via public USPTO records.

45. Subsequently, on December 12, 2024, Defendant initiated an opposition proceeding against Plaintiff's U.S. application (currently pending before the Trademark Trial and Appeal Board). In that opposition, Defendant (Comercializadora VNA) essentially asserts that Plaintiff's application should not proceed, presumably on grounds that *they* (VNA) are the rightful owner of or have priority in the "Sala de Despecho" mark, or that Plaintiff's mark would cause confusion with theirs.

46. It is important to emphasize the sequence of actions here: **(1)** Plaintiff is the first to file a U.S. trademark application for the name (March 14, 2024). **(2)** Defendant's principals meet with Plaintiff (around August 15, 2024), acknowledge Plaintiff's brand, and propose partnership. **(3)** Defendant files its own U.S. application for essentially the same mark ("Sala de Despecho") on Jun. 15, 2024, just months before the meeting, but after the Plaintiff's filing. **(4)** Defendant opposes Plaintiff's application (after Plaintiff's mark was published for opposition) on December 12, 2024 (TTAB Opposition No. 91295672)

47. These facts demonstrate that Defendant's U.S. filing was made with full knowledge of Plaintiff's prior rights and in reaction to Plaintiff's move to the U.S. market. Rather than being an innocent concurrent user, Defendant appears to be attempting to usurp the trademark rights in

a territory (the U.S.) where Plaintiff had signaled an intention to expand.

J.  Defendant's Expansion Plans and Market Presence

48. Since acquiring the brand, Defendant (through the Mandala Group backing) has pushed the Sala de Despecho concept aggressively.  By 2025, Sala de Despecho is not only a growing chain in Mexico but is making inroads into the United States. For instance, upon information and belief, a partnership event called "Sala de Despecho Pop Up" was held in Las Vegas in September 2024, bringing the concept to a U.S. audience. Promotional materials for that event explicitly describe what *"Despecho" means (spite, heartbreak, etc.)* and tout the experience as *"blending drinks, food, and passionate venting through music… born in Guadalajara… now we're bringing it to Las Vegas"*. Likewise, media reports announced a Miami location opening: Sala de Despecho is set to open in Wynwood, Miami (with a grand opening around May 2, 2025) as a *"bold fusion of Mexican pop culture where passion, flavor, and heartfelt sing-along music collide"*, reinforcing that they are carrying the concept abroad. The Mandala Group's considerable resources have enabled Defendant to create buzz in the U.S. even as the legal dispute over the name is ongoing.

49. On social media, Defendant's brand confuses audiences with the senior rights of the Plaintiff in the United States with viral attention, with TikTok and Instagram videos of patrons singing their hearts out reaching millions of views. Plaintiff uses similar social media and its website to reach its customers -- both brands target a demographic that is highly engaged online, and holds senior rights. Therefore, the marketing channels used by Plaintiff and Defendant greatly overlap: Instagram posts of people belting out breakup songs in restaurant and bar service settings, Facebook pages for event announcements  in restaurant and bar service

settings, and influencers or media articles touting the *despecho* experience in restaurant and bar service settings in restaurant and bar service settings are common to both. This overlap means that the audience in the United States encountering "Despecho" content could easily be confused as to which brand is which, if both continue to operate under such similar names.

50. In summary, Plaintiff has priority of use and filing in the name "Despecho," at least as early as late 2023 (in Mexico) and early 2024 (in the U.S. by application), whereas Defendant's "Sala de Despecho" infringes Plaintiff's rights in both countries. Defendant's subsequent actions -- acquiring the mark and then swiftly moving to file in the U.S. and oppose Plaintiff -- reflect a strategic attempt to claim the upper hand despite Plaintiff's senior rights. The fact that Defendant initially attempted to partner with Plaintiff but then chose a litigious path strongly suggests that Defendant recognized Plaintiff's dominance in the mark and possibly hoped to either bully Plaintiff into abandoning the U.S. effort or force a collaboration on Defendant's terms.

K. Likelihood of Confusion Analysis (Sleekcraft Factors)

51. Given the above facts, there is a high likelihood of confusion between Plaintiff's DESPECHO mark and Defendant's SALA DE DESPECHO mark in the United States (where Spanish is not the first language). Under the well-established *Sleekcraft* factors (used to evaluate likelihood of confusion in trademark law), virtually every factor here weighs in favor of the Plaintiff and against the Defendant in the United States. Below is an analysis of the key factors:

52. **Strength of Plaintiff's Mark:** *Despecho* as a brand for restaurant and bar service is distinctive in the United States. Although the word has a dictionary meaning ("heartbreak/spite") in Spanish, it is not a common generic term for bars or restaurants in the

United States. Plaintiff, through use and marketing, has imbued "DESPECHO" with a secondary meaning as the name of a restaurant and bar service. The Mexican IP authority's acceptance of the mark for registration in Class 43 confirms that it is considered at least suggestive (if not arbitrary) in relation to the services -- not merely descriptive. By early 2024, DESPECHO had garnered recognition in its market in Mexico; customers associated the name with Plaintiff's unique experience. Thus, Plaintiff's mark possesses substantial strength in the niche of nightlife services targeting the heartbreak theme when applied to its planned U.S. expansion. By contrast, Defendant's use of "Sala de Despecho" does not diminish the inherent distinctiveness of "Despecho" -- it actually affirms it, since Defendant adopted the same unique term to describe its similar concept. If anything, Plaintiff's mark is strengthened by being the one that achieved formal protection and senior use first in the relevant class in the United States.

53. **Proximity (Relatedness) of the Services:** The services offered by Plaintiff and Defendant are virtually identical. Both operate venues that combine elements of a bar, restaurant, and music, all centered around the theme of *despecho*. Customers go to either establishment for the same core purpose: to eat, drink, and sing away their heartbreak with friends. In trademark terms, Plaintiff's "providing food and drink" services (Class 43) and Defendant's entertainment/nightclub services (Class 41) are closely related, especially here where the entertainment (singing and music) is an integral part of the bar experience. A patron looking for a "Despecho" night out in the United States could be easily misled -- for example, one might think "Sala de Despecho" is a franchise or a specific location of the Despecho brand in the United States (since "sala" could imply a venue or branch). The near-perfect overlap in the concept and business model means the goods/services factor *strongly* favors finding

confusion likely in the United States.

54. **Similarity of the Marks:** The two marks share the dominant element "Despecho." In fact, Plaintiff's mark is exactly that single word DESPECHO, while Defendant's mark is "Sala de Despecho." When comparing marks, the dominant portion and overall commercial impression are crucial. Here, "Despecho" is the distinctive heart of Defendant's name, with "Sala de" being generic or descriptive ( "sala" means "hall" or "room" in Spanish, often used to denote a venue). Consumers in the United States are likely to focus on the word "Despecho" in both marks. Visually and aurally, the marks are highly similar to American audiences -- Defendant's name just adds a short prefix that does not change the meaning much (it essentially means "the Despecho hall"). Conceptually, the marks are identical in connotation to Spanish speakers, both referring to the same idea of a place for despecho (heartbreak) indulgence. Importantly, courts and trademark authorities  in the United States often consider whether one mark's addition is enough to avoid confusion; here, adding "Sala de" is akin to adding "Club" or "Bar" before a distinctive word -- it's insufficient to distinguish the source. Therefore, the similarity factor weighs heavily in Plaintiff's favor. Consumers who hear about a "Despecho" bar or see promotions for "Sala de Despecho"  in the United States are highly likely to assume they are the same establishment or affiliated. Indeed, bilingual consumers in the United States might translate "Sala de Despecho" in their head simply as "Despecho (the place)" and not perceive it as a different brand at all.

55. **Actual Confusion:** As of now, the two brands have primarily operated in parallel in Mexico (in some different cities) and are just beginning to appear in the U.S. (with Plaintiff planning to expand and Defendant already marketing in places like Miami). Documented

instances of actual consumer confusion may be limited at this early stage, simply because the geographic markets have not fully overlapped yet (Plaintiff has not opened a U.S. location yet, and Defendant's U.S. presence is new, upon information and belief). However, there are anecdotal indications of confusion potential: for example, social media comments have popped up with users not realizing there are two separate companies behind it. Given the identical naming, one can reasonably anticipate significant confusion  in the United States as soon as both operate in the same American city or online space. The absence of many reported incidents so far is likely due to the newness of the conflict, not because consumers can distinguish them in the United States. This factor is neutral or tilts toward Plaintiff  in the United States, since any confusion that does arise would directly harm Plaintiff (people might think Plaintiff's Despecho is part of or the same as Sala de Despecho by Mandala, which could dilute Plaintiff's brand or cause lost business).

56. **Marketing Channels and Customer Base:** Both Plaintiff and Defendant market their venues in very similar channels  in the United States-- primarily through websites, social media (Instagram, TikTok, Facebook), and word-of-mouth among the young adult demographic. Defendant's Sala de Despecho has leveraged viral TikTok and Instagram posts to gain popularity, and Plaintiff likewise relies on social media buzz and online engagement to attract the target audience of clients who love nostalgic music. Additionally, both have bilingual or Spanish-language marketing, appealing especially to Spanish-speaking communities and fans of Latin pop culture in the United States.  The high degree of overlap in marketing platforms and the intended audience increases the likelihood of confusion in the United States, as consumers are not encountering these brands in separate, distinguishable arenas in the United States for

1
2

restaurant and bar services.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

57. **Type of Purchase and Degree of Care:** The services in question (a night out at a restaurant or bar) are not high-cost, high-consideration purchases -- they are casual entertainment choices. Patrons in the United States deciding where to go out on a weekend might not exercise a high degree of care or research; they often rely on recommendations, social media snippets, or brand name recognition. If someone in the United States hears *"Despecho bar is great fun"*, they might show up at a "Sala de Despecho" location thinking it's the same thing, or vice versa. Unlike buying a car or expensive electronics, choosing a bar or restaurant lounge is often spontaneous or based on quick impressions in the United States. Moreover, given that a big selling point is the *emotional experience*, patrons are likely more focused on the promise of catharsis than on parsing brand distinctions in the United States. This factor means that even subtle differences in the names (and here the difference is very minor) will likely go unnoticed by the average consumer, increasing the risk of confusion.

18
19
20
21
22
23
24
25
26
27
28

58. **Defendant's Intent in Adopting the Mark:** Perhaps the most telling factor in this case is Defendant's intent. All evidence suggests that Defendant adopted and used "Sala de Despecho" in the United States with full knowledge of Plaintiff's earlier trademark filing of "Despecho," in the United States, and its success in Mexico.  The timeline is striking: Defendant's representatives acknowledged Plaintiff's brand and even attempted to collaborate, but only after Plaintiff had already taken steps to protect its mark (U.S. filing) did Defendant swiftly move to file their own application and oppose Plaintiff. If Defendant truly believed it had independent rights, it would not have needed to approach Plaintiff for partnership; the overture for partnership indicates Defendant recognized Plaintiff's mark had significant value

and seniority. The subsequent aggressive legal action -- filing an opposition on December 12, 2024 -- suggests an attempt not to avoid confusion, but to force Plaintiff out of the way. Furthermore, Defendant's inability to register the mark in Mexico for Class 43, and the knowledge of Plaintiff's prior filings, points to a scenario where Defendant is trying to *leapfrog* or bully the smaller senior user by leveraging greater resources. In trademark law, an intent to confuse or profit off another's goodwill is strongly probative of likely confusion. Here, Defendant's actions (adopting essentially the same name in the United States, in the same field, after failing to secure rights and after observing Plaintiff's success in Mexico) demonstrate an intent to create an association with the existing Despecho brand or to corner the market for restaurant and bar services. This factor weighs decisively in favor of Plaintiff -- it suggests that any doubt about confusion in the United States should be resolved acknowledging that Defendant *wanted* American consumers to associate the two, or at least was indifferent to the confusion because they aimed to dominate the concept.

59. **Likelihood of Expansion:** Both parties clearly envision expanding into each other's geographic and market space, which exacerbates the likelihood of confusion. Plaintiff's filing of a U.S. trademark shows its intent to expand the Despecho bars into the U.S. (and perhaps beyond). Defendant, through its Mandala Group connections, is rapidly expanding across Mexico and has started launching in the U.S. ( a new venue in Miami, and likely plans for other cities). There is effectively no market partition -- the competition is head-to-head. This is not a case of a regional user and a remote user with no overlap; rather, both are poised to compete for the same customers in the United States. In fact, had Defendant not opposed, Plaintiff would by now be moving forward with a U.S. Despecho location and both could have conceivably opened

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in multiple American cities at the same time. Given this trajectory, the factor of expansion heavily favors Plaintiff's position: without intervention, consumers in the United States will encounter both "Despecho" and "Sala de Despecho" in the same cities and online spaces, virtually guaranteeing confusion about affiliation or origin.

60. Considering all the above factors, it is clear that Plaintiff's prior rights in the "DESPECHO" mark in the United States should be upheld, and Defendant's use of "Sala de Despecho" in the United States is likely to cause confusion among the consuming public. The marks are substantially similar to American audiences, the services are identical, the market channels overlap in the United States, and Defendant's conduct reveals an intent that is far from innocent in the United States. In trademark disputes, the first-in-time senior user (Plaintiff) generally has priority, especially when they have secured registrations and established use, as Plaintiff has in Mexico (and is seeking in the U.S.). Here, Plaintiff not only has that priority, but also a strong case that "Despecho" as used by Plaintiff is inherently distinctive in the United States, whereas Defendant's attempt to appropriate the term only underscores its recognition as a brand identifier for Plaintiff.

L.  Conclusion

61. In view of the facts, Plaintiff is the senior rights holder of the "Despecho" mark for the relevant bar and restaurant services in the United States, and the term "Despecho" is distinctive in this context -- it functions as a brand, not just a generic word in the United States. Defendant's "Sala de Despecho" mark incorporates Plaintiff's entire mark and core identity, and Defendant adopted it with knowledge of Plaintiff's prior use. By all indications, Defendant's use of the name is infringing upon Plaintiff's priority rights through its intent to use application. The

situation is especially troubling given the evidence of bad faith: Defendant's sequence of actions -- from attempting partnership to promptly filing a competing application and opposition -- suggests an effort to bully Plaintiff out of the U.S. market despite Plaintiff's senior position.

62. If anything, the roles in the opposition should be viewed in light of reality: the Defendant is the junior user trying to usurp the goodwill of the senior user (Plaintiff) in the United States. The law does not reward such tactics. On the contrary, trademark law in the United States is designed to protect the first adopter of a distinctive mark and prevent consumer confusion. Here, allowing Defendant to proceed with "Sala de Despecho" in the United States would likely sow confusion and effectively sanction a form of market intimidation. Plaintiff respectfully asserts that its rights to DESPECHO in the United States be recognized as superior, and that Defendant's claims be rejected. The Defendant's opposition is unfounded and appears to be a maneuver to strong-arm a smaller competitor in the United States, rather than a defense of any legitimate prior right. All evidence -- cultural, linguistic, and factual -- supports that Plaintiff's "Despecho" brand is the original and authentic source of the despecho-themed restaurant and bar experience, and it should remain free from misappropriation or dilution by Defendant's later use.

## **FIRST CLAIM FOR RELIEF**

**Declaratory Judgment of Trademark Priority and Non-Infringement Under 28 U.S.C. §§ 2201–2202 and the Lanham Act, 15 U.S.C. § 1051 et seq.**

63. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

64. An actual, substantial, and justiciable controversy has arisen and now exists between

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff and Defendant concerning the rights to use and register the trademark DESPECHO in the United States.

65. Plaintiff is the applicant of U.S. Trademark Application Serial No. 98448579 for the mark DESPECHO, filed on March 14, 2024, on an intent-to-use basis in connection with restaurant and bar services (Class 43).

66. Prior to the Defendant's U.S. filings, Plaintiff had already established substantial brand goodwill and legal rights in Mexico under the DESPECHO mark through use in commerce, granted Mexican trademark registrations in Classes 25, 38, and 43, and publicly announced plans to expand into the United States.

67. Defendant Comercializadora VNA, S.A. de C.V. filed multiple U.S. applications for variations of the phrase "SALA DE DESPECHO" in August 2024, following the breakdown of business discussions with Plaintiff. These filings post-date Plaintiff's U.S. application and appear to be a retaliatory attempt to claim priority.

68. Defendant subsequently initiated opposition proceedings at the Trademark Trial and Appeal Board (Opposition No. 91295672), asserting alleged superior rights to the DESPECHO-formative marks despite no documented use in U.S. commerce prior to Plaintiff's filing date.

69. Upon information and belief, Defendant's U.S. trademark applications were filed shortly before their attempt to partner with Plaintiff failed, and after reviewing Plaintiff's successful brand presence in Mexico and plans to expand to the U.S. market. Defendant's actions have the effect of chilling Plaintiff's commercial expansion and clouding its legal rights.

70. Plaintiff maintains that it has priority in the United States based on the earlier-filed

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

intent-to-use application under 15 U.S.C. § 1057(c), and that Defendant's marks, filed subsequently and without actual use in U.S. commerce at the time, do not confer priority rights.

71. Moreover, to the extent Defendant claims any enforceable rights, such rights do not extend to blocking or interfering with Plaintiff's lawful use of its mark, nor do they establish infringement, as Plaintiff's mark is independently distinctive, culturally rooted, and non-confusing in commercial appearance and use.

72. Plaintiff has suffered and will continue to suffer irreparable harm to its business interests and trademark rights unless the Court declares that Plaintiff has superior rights to the DESPECHO mark in the United States and that its use of the DESPECHO mark does not infringe any valid rights of Defendant in the United States.

73. Declaratory relief is necessary and appropriate under 28 U.S.C. §§ 2201 and 2202 to resolve the legal uncertainty and dispute created by Defendant's opposition and actions at the TTAB.

## PRAYER FOR RELIEF

74. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and issue an order:

a. Declaring that Plaintiff has priority of rights in the United States to the DESPECHO mark based on its earlier-filed Application No. 98448579 and planned use in commerce;

b. Declaring that Plaintiff's use and registration of the DESPECHO mark does not infringe any trademark rights of Defendant Comercializadora VNA, S.A. de C.V.;

c. Declaring that Plaintiff's DESPECHO mark is distinctive and enforceable in U.S. commerce;

d.   Awarding Plaintiff its reasonable attorneys' fees and costs; and

e.   Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this Wednesday, July 22, 2025.

LEGALFORCE RAPC WORLDWIDE P.C.

By   /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiff:
LegalForce RAPC Worldwide P.C.

1
2

## **BENCH TRIAL REQUESTED**

3

4    Plaintiff hereby requests a bench trial on all issues so triable in this matter.

5    Respectfully submitted this Wednesday, July 22, 2025.

6

7                                        LEGALFORCE RAPC WORLDWIDE P.C.

8                                        By   /s/ Raj V. Abhyanker_____
                                         Raj V. Abhyanker
9                                        California State Bar No. 233,284
                                         Attorney for Plaintiff:
10                                       LegalForce RAPC Worldwide P.C.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28